DAVID ARONOFF (SBN 125694)
DAronoff@foxrothschild.com
JOSHUA BORNSTEIN (SBN 311658)
JBornstein@FoxRothschild.com
FOX ROTHSCHILD LLP
10250 Constellation Blvd., Suite 900
Los Angeles, CA 90067
Tel.:   310-598-4150
Fax:   310-556-9828

GAVIN W. SKOK (*pro hac vice* application pending)
GSkok@foxrothschild.com
FOX ROTHSCHILD LLP
1001 Fourth Ave., Suite 4500
Seattle, WA 98154
Tel.:   206-624-3600
Fax:   206-389-1708

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| ISPOT.TV, INC., a Delaware corporation,<br><br>Plaintiff,<br>v.<br><br>NADYA TEYFUKOVA, an individual,<br><br>Defendant. | Case No.<br><br>**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF FOR: (1) VIOLATION OF DEFEND TRADE SECRETS ACT (18 U.S.C. § 1836); (2) MISAPPROPRIATION OF TRADE SECRETS (Cal. Civ. Code § 3426.1 *et seq*.); AND (3) VIOLATION OF THE DIGITAL MILLENNIUM COPYRIGHT ACT (17 U.S.C. § 1201, *et seq*.)**<br><br>**DEMAND FOR JURY TRIAL** |

1

COMPLAINT

124873120

Plaintiff iSpot.tv, Inc. ("iSpot"), by and through its attorneys of record, alleges as follows:

## I.   NATURE OF ACTION

1.   iSpot is an industry leader in real-time television advertising data and analytics. At the core of iSpot's business is its proprietary, trade secret database, which provides extensive advertising data organized by industry, accessible through a user-friendly dashboard to iSpot's customers. iSpot has spent considerable time, money, and effort developing and maintaining its database, which, unlike legacy and ad hoc solutions, is purpose-built to measure the performance of every ad on television with digital-like precision and granularity in real time. To gain access to the database, iSpot's customers must agree to iSpot's Terms of Service, pay a monthly subscription fee (which can total hundreds of thousands of dollars), and receive a unique account login and security credentials.

2.   Defendant Nadya Teyfukova previously worked for Horizon Media ("Horizon"), a media services agency that was providing services to an iSpot customer, including through use of iSpot's database. Through her employment with Horizon, Teyfukova received account login credentials that allowed her to access iSpot's secure database. Teyfukova was only permitted to use her login credentials and access iSpot's database in the course and furtherance of her work at Horizon on behalf of that single iSpot customer.

3.   In September 2019, Teyfukova left Horizon and began working for EDO, Inc. ("EDO"), where she works as a Media Analytics Manager, servicing EDO's theatrical studio clients. EDO is a data analytics company that competes with iSpot in certain lines of business, including in media analytics provided to theatrical studios.

4.   After leaving Horizon in September 2019, Teyfukova was not authorized to use the iSpot account credentials issued to her while at Horizon, or to login to iSpot's secure, proprietary database. Despite the lack of authorization,

Teyfukova knowingly and continuously accessed and used iSpot's database until her unauthorized access was discovered in May 2021.

5. Between September 2019 and May 2021, Teyfukova surreptitiously made unauthorized access to iSpot's secure, proprietary database during more than 200 distinct sessions, generating over 1,000 reports and downloading hundreds of thousands of records—all without iSpot's authorization and without paying a subscription fee. Many of these unauthorized intrusions focused on viewing and exfiltrating information from iSpot's studio database, which contains data that would be highly valuable and useful to EDO and Teyfukova in her work on EDO's behalf in studio analytics. IP login information shows numerous unauthorized intrusions from IP addresses in or near the cities where Teyfukova lives and her workplace at EDO.

6. iSpot brings this action to protect its valuable intellectual property, prevent Teyfukova from making further unauthorized access to its database, and recover monetary damages.

## II.   PARTIES

7. Plaintiff iSpot.tv, Inc. is a Delaware corporation with its principal place of business in Bellevue, Washington.

8. Defendant Nadya Teyfukova is an individual who resides in North Hollywood, California.

## III.   JURISDICTION AND VENUE

9. This Court has subject matter jurisdiction over the federal claims under 28 U.S.C. § 1331. The Court has supplemental jurisdiction over the state law claim under 28 U.S.C. § 1367.

10. This Court has personal jurisdiction over Teyfukova because Teyfukova resides in this district.

11. Venue is proper in this district under 28 U.S.C. § 1391(b)(1) because Teyfukova resides in this district.

124873120

## IV. FACTS

**A. iSpot Invests Significant Time and Resources to Develop and Maintain Its Proprietary Advertising Database, Which Is Recognized as an Industry Leader.**

12. iSpot offers real-time television advertising measurement and attribution services that enable advertisers and TV networks to plan, optimize, and transact their television advertising purchases on business-outcome measures.

13. As part of its business, iSpot has developed an extensive proprietary database of TV and video advertising. iSpot collects, analyzes, and aggregates advertising data, and then organizes that data by industry into a user-friendly and graphical interface.

14. iSpot has spent considerable time and resources developing and maintaining its trade secret database over many years, which forms the foundation of its business. The database is built by automatically "watching" TV feeds using Automated Content Recognition (ACR) technologies, determining each airing of an advertisement, and extracting new television advertisements or new variations of an advertisement that have not been seen before. The advertisements are then layered with extensive metadata that tracks products, pricing, promotions, actors, songs, mood, URL, phone numbers and many other dimensions. It has taken nearly nine years to build accuracy, speed, and the scale inherent in the database, which today covers over 1.5 million advertisements. The data and analytics in iSpot's database are not publicly available in one compilation, and it would take considerable time, money, and effort to replicate, if replication were even possible. As a result, iSpot's database gives iSpot a significant competitive advantage in the industry, which is maintained and furthered by the secrecy of the database.

15. iSpot licenses access to its database to approved customers for a monthly subscription fee, which can total hundreds of thousands of dollars. iSpot requires its customers to obtain secure account login credentials for each individual

who will be accessing the database.  To control access to its proprietary database, iSpot prohibits its customers from sharing a single login among multiple users.

16. iSpot has taken reasonable steps to secure and protect its proprietary database and the trade secret information that it contains.  For example, iSpot carefully screens its customers, then limits access to its database to customers who sign a subscription agreement and agree to iSpot's Terms of Service, which include confidentiality obligations.  iSpot's customers may only access the specific portion of the database they are licensed to access, agree to keep all information from iSpot's database confidential, and are barred from sharing data from iSpot's database outside of their respective organizations or use that data for any unlicensed purpose.  iSpot's database is also password protected and each user must have secure login credentials to gain access.

**B. Teyfukova Repeatedly Accessed iSpot's Database and Exfiltrated Large Amounts of Proprietary Data, All Without License or Authorization.**

17. Teyfukova is a former employee of Horizon, a media agency that provides services for a long-standing customer of iSpot that has a license to access iSpot's proprietary database.  Horizon receives secure account login credentials for iSpot's database for the sole purpose of performing that work and is only permitted to use the login credentials and access iSpot's database for the benefit of that specific iSpot customer.

18. Through her employment with Horizon, Teyfukova received secure login credentials to access iSpot's database.

19. In September 2019, Teyfukova left Horizon and began working at EDO, an iSpot competitor, as a Media Analytics Manager.  EDO is a television and movie advertising data, measurement, and analytics company headquartered in Culver City, California.  EDO's website identifies Teyfukova's area of focus as "Studio Analytics."

5
COMPLAINT
124873120

20. Despite being not having been authorized to use her secure login credentials for iSpot's database except while working at Horizon and only for her work at Horizon for a specific iSpot customer, Teyfukova has improperly continued to use her login to impermissibly access iSpot's database on a regular basis after leaving Horizon and commencing work for iSpot's competitor, EDO. Since September 2019, Teyfukova has illicitly logged into iSpot's proprietary database for approximately 200 sessions, generated over 1000 reports related to movie and streaming titles, and downloaded hundreds of thousands of related records. Most of those login events were made from IP addresses in or near cities where Teyfukova's home and workplace at EDO are located.

21. The information Teyfukova accessed and exfiltrated is highly valuable to Teyfukova in her employment at EDO where she works on a product and service that directly competes with iSpot in the studio space that the information relates to. That information would also have significant economic and competitive value to EDO for the same reasons. The unauthorized access has further economic value to Teyfukova and EDO because it allowed viewing and downloading of valuable proprietary and secret information without the cost to Teyfukova or EDO of paying the licensing fees charged by iSpot for authorized access to such information.

### V.     FIRST CLAIM FOR RELIEF

**Violation of the Defend Trade Secrets Act (18 U.S.C. § 1836)**

22. iSpot incorporates the allegations in the preceding paragraphs 1 through 21 as if fully set forth herein.

23. iSpot's proprietary database and the information contained therein constitute an original and highly valuable compilation, selection and arrangement of business information and other material, which iSpot has spent substantial time, resources, and money developing and maintaining.

24. iSpot's database and the information contained therein derive independent economic value from not being generally known to, and not being

readily ascertainable through proper means by, those who could obtain economic value from the disclosure or use of the information.

25. The information contained in iSpot's database is used in interstate commerce.

26. iSpot has taken reasonable measures to keep the information contained in its proprietary database secret and confidential. These measures include, but are not limited to, (i) limiting access to iSpot's database to customers who agree to iSpot's Terms of Service, which include confidentiality obligations, (ii) imposing password protections on the database, and (iii) requiring customers to use unique account logins to access the database.

27. Teyfukova used improper means, including unauthorized access, to access iSpot's database and acquire information contained therein. Teyfukova knew or had reason to know that she was using improper means to access iSpot's database and acquire the information contained therein.

28. Teyfukova's misappropriation of iSpot's trade secrets was willful and malicious.

29. As a result of Teyfukova's actions, iSpot has suffered and will continue to suffer competitive harm, irreparable injury, and damages in an amount to be proven at trial.

30. Under 18 U.S.C. § 1836(b)(3)(B)(i), iSpot is entitled to damages for iSpot's actual losses and Teyfukova's unjust enrichment, in amounts to be proven at trial. Alternatively, iSpot is entitled to damages measured by a reasonable royalty under 18 U.S.C. § 1836(b)(3)(B)(ii).

31. iSpot is also entitled to exemplary damages under 18 U.S.C. § 1836(b)(3)(C) and its attorneys' fees under 18 U.S.C. § 1836(b)(3)(D).

## VI.   SECOND CLAIM FOR RELIEF

**Misappropriation of Trade Secrets (Cal. Civ. Code § 3426.1 *et seq*.)**

32.   iSpot incorporates the allegations in the preceding paragraphs 1 through 31 as if fully set forth herein.

33.   As alleged above, iSpot's database and the information contained therein constitute trade secrets under the California Uniform Trade Secrets Act.

34.   As alleged above, iSpot has made reasonable efforts to maintain the secrecy of the information contained in iSpot's database.

35.   Teyfukova used improper means, including unauthorized access, to access iSpot's database and acquire information contained therein.  Teyfukova knew or had reason to know that she was using improper means to access iSpot's database and acquire the information contained therein.

36.   As a result of Teyfukova's actions, iSpot has suffered and will continue to suffer competitive harm, irreparable injury, and damages in an amount to be proven at trial.

37.   Under California Civil Code § 3426.3(a), iSpot is entitled to damages for iSpot's actual losses and Teyfukova's unjust enrichment, in an amount to be proven at trial.  Alternatively, iSpot is entitled to damages measured by a reasonable royalty under California Civil Code § 3426.3(b).

38.   iSpot is also entitled to exemplary damages under California Civil Code § 3426.3(c) and its attorneys' fees under California Civil Code § 3426.4.

## VII.   THIRD CLAIM FOR RELIEF

**Violation of the Digital Millennium Copyright Act (17 U.S.C. § 1201, *et seq*.)**

39.   iSpot incorporates the allegations in the preceding paragraphs 1 through 38 as if fully set forth herein.

40.   iSpot's database is an original work of authorship that is fully protected by the Copyright Act, 17 U.S.C. 101 *et seq*., including, without limitation,

1 | as to the selection, coordination and arrangement of the data, information, and other material that iSpot has selectively chosen to include and correlate in its database.

41. As alleged above, iSpot uses technological measures, including password protection and unique login credentials, to protect and control access to its copyright-protected database.

42. Through her unauthorized use of login credentials, Teyfukova has circumvented iSpot's technological measures to gain access to iSpot's database.

43. As a result of Teyfukova's actions, iSpot has suffered and will continue to suffer irreparable injury and damages in an amount to be proven at trial.

44. iSpot is entitled to its actual damages under 17 U.S.C. § 1203(c)(2), including any and all of Teyfukova's profits, in an amount to be proven at trial. Alternatively, iSpot is entitled to statutory damages under 17 U.S.C. § 1203(c)(3).

45. iSpot is also entitled to its attorneys' fees and costs under 17 U.S.C. § 1203(b)(4)–(5).

46. iSpot is also entitled to injunctive relief under 17 U.S.C. § 1203(b)(1).

## PRAYER FOR RELIEF

WHEREFORE, iSpot prays for judgment and the following relief against Teyfukova:

1. For an award of iSpot's actual damages and restitution for Teyfukova's unjust enrichment under 18 U.S.C. § 1836(b)(3)(B)(i) or, in the alternative, for an award of damages measured by a reasonable royalty under 18 U.S.C. § 1836(b)(3)(B)(ii).

2. For an award of iSpot's actual damages and restitution for Teyfukova's unjust enrichment under California Civil Code § 3426.3(a) or, in the alternative, for an award of damages measured by a reasonable royalty under California Civil Code § 3426.3(b).

COMPLAINT

124873120

     3.     For an award of iSpot's actual damages and Teyfukova's profits under 17 U.S.C. § 1203(c)(2), or, in the alternative, for an award of statutory damages under 17 U.S.C. § 1203(c)(3).

     4.     For an award of compensatory damages.

     5.     For an award of exemplary damages as permitted by law, including under 18 U.S.C. § 1836(b)(3)(C) and California Civil Code § 3426.3(c).

     6.     For an award of iSpot's reasonable attorneys' fees and costs as permitted by law, including under 18 U.S.C. § 1836(b)(3)(D), California Civil Code § 3426.4, and 17 U.S.C. § 1203(b)(4)-(5).

     7.     For an order (including, without limitation, a temporary, preliminary, and/or permanent injunction):

          a.     enjoining Teyfukova's unauthorized access to iSpot's database;

          b.     enjoining Teyfukova from sharing or distributing any information acquired from iSpot's database without iSpot's authorization with any other organization or individual; and

          c.     ordering Teyfukova to return or destroy all information acquired from iSpot's database without iSpot's authorization within her possession, custody, or control within ten (10) days of entry of the order, and making all reasonable efforts to retrieve or recover any such information she provided to her current employer and then returning or certifying destruction of all such information.

     8.     For an award of pre- and post-judgment interest.

     9.     For such other relief as the Court deems equitable and just.

///
///
///
///

Dated: August 24, 2021  **FOX ROTHSCHILD LLP**

By: /s/ *David Aronoff*
DAVID ARONOFF
*Attorneys for Plaintiff*

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all issues so triable.

Dated: August 24, 2021  **FOX ROTHSCHILD LLP**

By: /s/ *David Aronoff*
DAVID ARONOFF
*Attorneys for Plaintiff*