O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ISPOT.TV, INC.,<br><br>               Plaintiff,<br><br>     v.<br><br>NADEZHDA TEYFUKOVA a/k/a NADYA TEYFUKOVA, AND ENTERTAINMENT DATA ORACLE, INC.,<br><br>               Defendants. | Case No.: 2:21-cv-06815-MEMF(MARx)<br><br>**ORDER GRANTING DEFENDANTS NADYA TEYFUKOVA AND ENTERTAINMENT DATA ORACLE, INC.'S MOTION TO DISMISS [ECF NO. 75] AND DENYING PLAINTIFF ISPOT.TV, INC'S REQUEST FOR CERTIFICATION FOR INTERLOCTORY APPEAL [ECF NO. 79]** |

      Before the Court is the Motion to Dismiss Plaintiff's Digital Millennium Copyright claim filed by Defendants Nadezhda Teyfukova and Entertainment Data Oracle, Inc. ECF No. 75. Also before the Court is the Request for Certification for Interlocutory Appeal, filed by Plaintiff iSpot.TV, Inc. ECF No. 79. For the reasons stated herein, the Motion to Dismiss is GRANTED. The Request for Certification for Interlocutory Appeal is DENIED.

/ / /

/ / /

## I. Factual and Procedural Background[1]

The Court previously summarized the case background in its Order Granting in Part and Denying in Part Defendants' Motions to Dismiss. ECF No. 71 ("Order"). As such, the Court only recites the factual and procedural background as it is relevant to the instant Motion.

### A. Factual Background

Plaintiff iSpot.tv, Inc. ("iSpot") is a data and analytics company which provides its clients with real-time television advertising data and analytics. SAC ¶ 2. iSpot stores its data in a database (the "Database") that is only accessible to customers that have entered into a subscription agreement ("Agreement") and pay a subscription fee. *Id.* The Agreement binds all customers to iSpot's terms of service. *Id.* Customers can only access the Database with a "unique account login and security credentials associated with a specific customer and that customer's subscription." *Id.*

Defendant Entertainment Data Oracle, Inc. ("EDO") is a "data, measurement, and analytics company that advances the success of marketing, research, and creative professionals." *Id.* EDO provides companies with "insights" into the efficacy of TV ads, specifically as the data relates to consumer engagement and purchase activity. *Id.* ¶ 24.

From 2014 to 2017, EDO and iSpot entered into three Agreements, granting EDO access to the Database. *See id.* ¶¶ 3–5. However, EDO—in violation of the Agreements—downloaded tens of thousands of iSpot's ads and data. *Id.* ¶ 7. In 2018, upon expiration of iSpot and EDO's final Agreement, EDO launched two new products: the "TV Ad Database" and the "TV Ad Engagement" platforms. *Id.* ¶ 8. Both products appear to compete with the Database. *Id.*

Defendant Nadezhda Teyfukova a/k/a Nadya Teyfukova ("Teyfukova"), is an EDO employee. *Id.* ¶ 9. Prior to joining EDO in 2019, Teyfukova was an employee of Horizon Media ("Horizon"), a media services agency that provided services to an iSpot customer. *Id.* ¶¶ 51–52. As part of her role at Horizon, Teyfukova was granted login credentials (the "Horizon credentials") to the Database, including a username linked specifically to her Horizon email address, nteyfukova@horizonmedia.com. *Id.* ¶¶ 51–52.

---

[1] Unless otherwise indicated, the following facts are derived from the Second Amended Complaint. ECF No. 74 ("SAC").

2

Teyfukova was "only permitted to use these login credentials" for the explicit purpose of accessing iSpot's database in the course of her work for Horizon's customer. *Id.* ¶ 52. In September 2019, Teyfukova left Horizon for her current role at EDO. *Id.* ¶ 54. At EDO, she continued to use the Horizon credentials during typical work hours, to access the iSpot database, doing so over 150 times including many times from EDO's Culver City location and her personal home in Los Angeles. *Id.* ¶¶ 9, 54–55. She accessed and downloaded over 40 reports related to the movie industry. *Id.* ¶¶ 55–56.

### B. Procedural Background

On August 24, 2021, iSpot filed its initial complaint against Teyfukova pleading the following: (1) violation of the Defend Trade Secrets Act, 18 U.S.C. § 1836, *et seq.*; (2) misappropriation of trade secrets, CAL. CIV. CODE § 3426.1, *et seq.*; and (2) violation of the Digital Millennium Copyright Act, 17 U.S.C. § 1201, *et seq.* ("DMCA") ECF No. 1. On February 7, 2022, *see* ECF Nos. 23, 28, Teyfukova filed a motion to dismiss. ECF No. 34.

On April 15, 2022, the EDO Defendants filed a motion to dismiss all four claims for failure to state a claim. ECF No. 55. On October 3, 2022, EDO filed an additional motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) seeking dismissal of iSpot's breach of contract claim for lack of subject matter jurisdiction. ECF No. 62. On January 25, 2023, the Court issued an order granting in part and denying in part the EDO Defendants' Motion to Dismiss for failure to state a claim, and denied EDO's Motion to Dismiss for lack of subject matter jurisdiction. *See generally* Order. The Court granted the Motion to Dismiss as to iSpot's DMCA claim with leave to amend. *Id.* at 17–22.

On February 24, 2023, iSpot filed a timely SAC. *See* SAC. On March 20, 2023, the EDO Defendants filed a Motion to Dismiss the DMCA claim. ECF No. 75 ("Motion" or "Mot."). The Motion was fully briefed as of April 14, 2023. ECF Nos. 79 ("Opposition" or "Opp'n"); 81 ("Reply"). The Court heard oral argument on May 4, 2023.

/ / /

/ / /

### II. Applicable Law

#### A. Motion to Dismiss pursuant to Rule 12(b)(6)

Under Federal Rule of Civil Procedure Rule 12(b)(6), a party may file a motion to dismiss for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). The purpose of Rule 12(b)(6) is to "enable defendants to challenge the legal sufficiency of claims asserted in a complaint." *Rutman Wine Co. v. E. & J. Gallo Winery*, 829 F.2d 729, 738 (9th Cir. 1987). A district court may properly dismiss a claim under Rule 12(b)(6) if the complaint fails to allege sufficient facts to support a cognizable legal theory. *Caltex Plastics, Inc. v. Lockheed Martin Corp.*, 824 F.3d 1156, 1159 (9th Cir. 2016).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter . . . to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* While a complaint does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than "threadbare recitals of the elements of a cause of action." *Id.* at 678. "Determining whether a complaint states a plausible claim for relief is 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *Ebner v. Fresh, Inc.*, 838 F.3d 958, 963 (9th Cir. 2016) (quoting *Iqbal*, 556 U.S. at 679).

When evaluating a complaint under Rule 12(b)(6), the court "must accept all well-pleaded material facts as true and draw all reasonable inferences in favor of the plaintiff." *Caltex*, 824 F.3d at 1159; *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008) ("We accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party."). This tenet, however, is "inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678.

While the Court is required to "take all allegations of material fact as true and construe them in the light most favorable to the nonmoving party" on a Rule 12(b)(6) motion to dismiss, *In re Nat'l Football League's Sunday Ticket Antitrust Litig.*, 933 F.3d 1136, 1149 (9th Cir. 2019), the plaintiff

is required to plead sufficient facts showing "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. However, when the plaintiff has met the possibility threshold and, in response, the defendant has advanced an alternative explanation that is also more than possible, the Ninth Circuit requires that the plaintiff's complaint survive motion to dismiss. *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). Put differently, "[i]f there are two alternative explanations, one advanced by defendant and the other advanced by plaintiff, both of which are plausible, plaintiff's complaint survives a motion to dismiss under Rule 12(b)(6)." *Id.*

Plausibility is more than mere possibility. Plausibility requires that the plaintiff "do more than allege facts that are merely consistent with both their explanation and defendants' competing explanation." *In re Century Aluminum Co. Sec. Litig.*, 729 F.3d 1104, 1108 (9th Cir. 2013) (citing *Iqbal*, 556 U.S. at 678). Thus, when both parties have advanced "possible explanations," where only one is true and "only one of which results in liability," a plaintiff must offer allegations that are more than "merely consistent" with their advanced explanation. *Id.* Instead, "[s]omething more is needed, such as facts tending to exclude the possibility that the alternative explanation is true in order to render plaintiffs' allegations plausible within the meaning of [*Iqbal*] and [*Twombly*]." *Id.* (internal citations omitted) (citing *Iqbal*, 556 U.S. at 678 and *Twombly*, 550 U.S. at 554).

**III.     Discussion**

The EDO Defendants seek to dismiss the DMCA claim ag on the grounds that the SAC fails to cure the defects identified in the Court's Order as it does not allege conduct that rises to circumvention under the meaning of DMCA. Mot. at 1, 4–8.

**A. Summary of new allegations**

The Court begins by recounting the new allegations raised in the SAC as to the DMCA claim. iSpot alleges as follows:

- Through her employment with Horizon, Ms. Teyfukova was provided confidential password and account login credentials allowing her to access iSpot's secure database. Ms. Teyfukova's user ID for access to iSpot's database was "nteyfukova@horizonmedia.com", an email address reflecting that she was employed at Horizon and was conducting work on behalf of Horizon's specific iSpot customer. Ms. Teyfukova knew that she was only permitted to use these

confidential login credentials and access iSpot's database in the course and furtherance of her work at Horizon on behalf of that single iSpot customer. SAC ¶ 52;

- In September 2019, Ms. Teyfukova left Horizon and began working for EDO as a Media Analytics Manager servicing EDO's movie studio clients. At the time, EDO had over 100 employees. Ms. Teyfukova reported to a direct supervisor at EDO and was also under the direction and control of other EDO employees and officers during her employment. *Id.* ¶ 54;

- Even though she was only authorized to use the iSpot services while at Horizon and in the course of her work on behalf of the single iSpot client Horizon was assisting, Ms. Teyfukova took her confidential iSpot access credentials with her when she left Horizon and joined EDO in early September 2019. She then used those stolen credentials for the benefit of EDO, and at the knowing direction and control of EDO, with the purpose of evading and bypassing the technological security barriers that restricted access to the iSpot database and services to only authorized users in order to continue logging into the iSpot database and using the iSpot services after leaving Horizon when she was no longer authorized to do so. Ms. Teyfukova was aware of these technological security barriers from her prior work at Horizon and knew they were intended to prevent unauthorized access to the iSpot database and services, but she intentionally used the stolen Horizon credentials at EDO's knowing direction and control to benefit EDO in violation of her duty of loyalty to Horizon and with the primary purpose of evading those barriers in order to gain access to iSpot's system. Each time that Ms. Teyfukova logged into the iSpot database, she committed at least two separate wrongful acts. First, she intentionally and falsely misrepresented that she was still an employee of Horizon, acting within the course of scope of such employment and on the behalf of iSpot's customer that Horizon was assisting, by entering the username nteyfukova@horizonmedia.com. Second, with knowledge that she was not authorized to do so, she utilized the password that had been authorized for her use solely for work in the course and scope of her employment at Horizon on behalf of the iSpot customer that Horizon was assisting. Ms. Teyfukova repeated these separate wrongful acts over 150 times to access iSpot's database after joining EDO, viewing thousands of pages of information in iSpot's database and generating and downloading hundreds of reports that contained proprietary information from iSpot's database. *Id.* ¶ 55;

- Ms. Teyfukova accessed iSpot's database and stole its data in the course of her employment with EDO, at the knowing direction and control of her direct supervisor and others at EDO, and for EDO's benefit, using the confidential login credentials provided to her by Horizon and in violation of her duty of loyalty to Horizon. Once Ms. Teyfukova joined EDO, the IP addresses used to login to iSpot's database with her credentials almost immediately shifted to Culver City, where EDO is headquartered. When COVID shelter-in-place orders were issued and Ms. Teyfukova began working from home full time for EDO, the IP addresses used for many logins with her credentials shifted to the zip code where she resides. For example, during a two-day stretch in November 2019, the Teyfukova credentials were used to access the iSpot database multiple times from both Culver City and from Ms. Teyfukova's home zip code, and nearly 40 detailed data reports generated

and downloaded related to the movie industry (EDO's and Ms. Teyfukova's focus) taken during those logins. The majority of logins using the Teyfukova credentials also occurred during normal business hours on weekdays, at times when Ms. Teyfukova would be at work for EDO. *Id.* ¶ 56;

- Additionally, iSpot is informed and believes, and based on such information and belief alleges, that EDO knowingly and intentionally induced Ms. Teyfukova, as a condition of her employment at EDO, to further violate her duty of loyalty to Horizon, her former employer, by also turning over to EDO the sensitive and confidential iSpot password and username given to her solely for her use as an employee of Horizon to enable other employees of EDO, including Ms. Teyfukova's direct supervisor at EDO and other additional employees of EDO, as well as automated software and information technology systems of EDO under EDO's control, to access iSpot's proprietary database by bypassing its password protection gating system to view and download valuable information under the knowingly false pretext of supposedly being "nteyfukova@horizonmedia.com" – an employee of Horizon. The primary purpose of the actions of Ms. Teyfukova, EDO, and other EDO employees, including Ms. Teyfukova's supervisor, was to knowingly evade iSpot's technological database protections and break into its database by bypassing the iSpot's credential gating system restricting access to the database to only properly authorized users, including certain employees of Horizon. *Id.* ¶ 57.

**B. iSpot fails to state a claim under the Digital Millennium Copyright Act.**

iSpot brings a claim against the EDO Defendants under the anticircumvention provision of the DMCA on two grounds: (1) Teyfukova's use of the Horizon credentials during her time at EDO and (2) the use of the Horizon credentials by EDO employees other than Teyfukova. *See* SAC ¶¶ 54, 56–57.

To state a claim under the anticircumvention provision of the DMCA, iSpot must allege that (i) the work at issue was protected under the Copyright Act, (ii) the copyrighted work was protected by a "technological measure," and (iii) the technological measure was "circumvented" in order to obtain access to the copyrighted work." 17 U.S.C. § 1201(a)(1)(A); *see also MDY Indus., LLC v. Blizzard Ent., Inc.*, 629 F.3d 928, 944 (9th Cir. 2010) (noting that 17 U.S.C. § 1201(a) "prohibits the circumvention of any technological measure that effectively controls access to a protected work and grants copyright owners the right to enforce that prohibition.").

A technological measure "effectively controls access to a work if the measure, in the ordinary course of its operation, requires the application of information, or a process or a treatment, with the authority of the copyright owner, to gain access to the work." *Id.* (a)(3)(B) (internal

quotation marks omitted). "Circumvention" is "to descramble a scrambled work, to decrypt an encrypted work, or otherwise to avoid, bypass, remove, deactivate, or impair a technological measure, without the authority of the copyright owner." 17 U.S.C. § 1201(a)(3)(A).

1. Teyfukova's use of the Horizon credentials does not qualify as circumvention.

The EDO Defendants argue that the SAC "presents no new allegations" as to whether Teyfukova's individual use of the Horizon credentials qualifies as circumvention. Mot. at 5. iSpot's DMCA claim now appears to proceed on three theories: (1) that Teyfukova's use of the Horizon credentials after the end of her tenure at Horizon qualifies as a violation of the DMCA; (2) that Teyfukova engaged in circumvention by sharing the Horizon credentials with other EDO employees; and (3) that the other EDO employees' use of the Horizon credentials qualifies as circumvention. *See* Opp'n at 7–16; SAC ¶¶ 51–52, 55–57.

However, before the Court turns to its substantive analysis, it reiterates[2] that as the Ninth Circuit has yet to rule on circumvention in this particular context, the Court's analysis must begin with the text of the DMCA. *See Texaco Inc. v. United States*, 528 F.3d 703, 707 (9th Cir. 2008) ("The first step in interpreting a statute 'is to determine whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case.'" (citing *Robinson v. Shell Oil Co.*, 519 U.S. 337, 340 (1997))).[3] The statute provides the following definition of circumvention: "to descramble a scrambled work, to decrypt an encrypted work, or otherwise to avoid, bypass, remove, deactivate, or impair a technological measure, without the authority of the copyright owner." 17 U.S.C. § 1201(a)(3)(A). To determine whether iSpot has properly pleaded circumvention, therefore, this Court must consider whether iSpot has properly alleged that Teyfukova "avoid[ed], bypass[ed], remove[d], deactivate[d], or impair[ed]" the technological measure at issue—namely the password and username system. *Id.*

///

---

[2] *See* Order at 19–21.

[3] *See also Food Mktg. Inst. v. Argus Leader Media*, 139 S. Ct. 2356, 2364 (2019) ("In statutory interpretation disputes, a court's proper starting point lies in a careful examination of the ordinary meaning and structure of the law itself.").

      *a. Teyfukova's individual use of the Horizon credentials does not qualify as circumvention.*

The Court previously found that "[t]he allegations in the FAC indicate that, rather than avoiding or bypassing the system, Teyfukova simply used the Horizon credentials as they were intended to be used." Order at 19. The new allegations in the SAC do not lead the Court to a different conclusion.

The SAC now appears to advance the theory that EDO utilized Teyfukova—as the possessor of the Horizon credentials—as a tool by which EDO gained access to the system. SAC ¶¶ 55 (Teyfukova used the "stolen credentials for the benefit of EDO, and at the knowing direction and control of EDO, with the purpose of evading and bypassing the technological security barriers that restricted access to the iSpot database and services to only authorized users in order to continue logging into the iSpot database and using the iSpot services after leaving Horizon when she was no longer authorized to do so"); 56 ("at the knowing direction and control of her direct supervisor and others at EDO, and for EDO's benefit, using the confidential login credentials provided to her by Horizon and in violation of her duty of loyalty to Horizon."); 57 ("EDO knowingly and intentionally induced Ms. Teyfukova, as a condition of her employment at EDO, to further violate her duty of loyalty to Horizon, her former employer, by also turning over to EDO the sensitive and confidential iSpot password and username given to her solely for her use as an employee of Horizon.").

    iSpot relies heavily on section 2860 of the California Labor Code, which provides that "[e]verything which an employee acquires by virtue of his employment, except the compensation which is due to him from his employer, belongs to the employer, whether acquired lawfully or unlawfully, or during or after the expiration of the term of his employment." CAL. LAB. CODE § 2860. iSpot argues that this provision indicates that Horizon retained ownership of the credentials upon Teyfukova's departure from Horizon, and that Teyfukova "violated her duty of loyalty to Horizon" when she knowingly used the credentials outside the scope of her employment at Horizon. Opp'n at 13. The EDO Defendants argue that the legitimacy of the login credentials is the dispositive factor because it forecloses the possibility that Teyfukova *personally* took any steps to qualify as circumvention under the plain meaning of the statute. Mot. at 4–7.

The Court finds iSpot's argument unavailing. Even if EDO directed Teyfukova to utilize the Horizon credentials to access the Database, it does not change the fact that Teyfukova did not take any steps that qualify as circumvention within the plain meaning of the statute. The SAC still only alleges that Teyfukova individually used the credentials in the technological manner by which she was authorized to do so—albeit without authorization. Indeed, the SAC still does not allege that Teyfukova took any steps to avoid, bypass, remove, deactivate, or impair the Horizon credentials. Adding that the purpose of her actions was to bypass the technological security barriers is not enough given what is alleged to be "bypassing." Put another way, she simply did not evade the protections of the database in the means prohibited by the statute. Accordingly, the SAC has not addressed the flaw identified in the Court's Order.[4]

Similarly, whether Horizon maintained ownership over the credentials has no bearing on whether Teyfukova's use of the credentials qualifies as circumvention. The SAC still only indicates that "Teyfukova utilized a username and password that was duly provided to her long after she was authorized to use it." Order at 20. Whether Teyfukova violated any loyalty to Horizon or whether Horizon retained ownership of the credentials is irrelevant to the question of whether she "avoid[ed]," "bypass[ed]," or "impair[ed]" the Horizon credentials. *See* Order at 19–20.

As such, Teyfukova's individual use of the Horizon credentials does not constitute circumvention within the meaning of the DMCA.

>   b. *That Teyfukova shared the Horizon credentials with other EDO employees, or that other EDO employees used the credentials to access the Database, does not qualify as circumvention.*

The SAC is not any more successful with respect to Teyfukova's sharing of the Horizon credentials with other EDO employees. The SAC alleges that

---

[4] iSpot makes much of this Court's prior statement that "There are no allegations that the primary purpose of Teyfukova's actions was to evade iSpot's database protections. In the absence of such allegations, the Court finds that Teyfukova's actions—as alleged in the FAC—do not qualify as circumvention within the meaning of the DMCA." Order at 21. Taken in context, it is clear that the Court did not hold that pleading such a purpose would be sufficient. The purpose obviously cannot change the act itself—which in this instance, does not qualify as circumvention.

> that EDO . . . induced Ms. Teyfukova . . . to further violate her duty of loyalty to Horizon, her former employer, by also **turning over to EDO the sensitive and confidential iSpot password and username given to her** solely for her use as an employee of Horizon **to enable other employees of EDO, including Ms. Teyfukova's direct supervisor at EDO and other additional employees of EDO**, as well as automated software and information technology systems of EDO under EDO's control, to access iSpot's proprietary database by bypassing its password protection gating system to view and download valuable information under the knowingly false pretext of supposedly being "nteyfukova@horizonmedia.com" – an employee of Horizon.

SAC ¶ 57 (emphasis added).

iSpot argues that these allegations are sufficient as they indicate that individuals other than Teyfukova, used the Horizon credentials to access the Database. Opp'n at 15–16. The EDO Defendants, however, contend these allegations are insufficient as they incorrectly focus on the individuals who used the technological measure rather than the "manner" by which the measure was used. Reply at 6. Thus, according to the EDO Defendants, iSpot has failed to state a claim as the SAC fails to "differentiat[e] the means by which other EDO employees allegedly accessed iSpot's database from the means by which Ms. Teyfukova allegedly accessed iSpot's database." Mot. at 7. The Court agrees.

Even upon amendment, the SAC solely relies on the EDO Defendants' "intent" and "primary purpose" of utilizing the Horizon credentials. Opp'n at 15–16. iSpot argues that Teyfukova acted as a "housekeeper who [did] not return the door key of her former employer and then [was] induced to give the key to a burglar," and thus used the key outside of the scope of its intended use. *Id.* at 11. But this argument still fails to show that Teyfukova, or any other EDO employee, made any material changes to the proverbial key itself—or the lock or the door.

To reiterate, "circumvention" is "to descramble a scrambled work, to decrypt an encrypted work, or otherwise to avoid, bypass, remove, deactivate, or impair *a technological measure*, without the authority of the copyright owner." 17 U.S.C. § 1201(a)(3)(A) (emphasis added). Most relevant here is the statute's relationship between "circumvention" and "technological measure." The wording of the statute indicates that "circumvention" requires some manipulation of the

technological measure at hand and certainly more than that a username and password was simply transferred into the hands of another.

As such, the accessing of the Database with unaltered Horizon credentials by EDO employees, *see* SAC ¶ 57, does not constitute circumvention.[5]

The SAC appears to suffer from the same deficiencies that existed in the previous complaint. iSpot still fails to allege that the Horizon credentials were "descramble[d] . . . decrypt[ed] . . . or otherwise to avoid[ed], bypass[ed], remove[d], deactivate[d], or impair[ed]." Absent such allegations, the SAC again fails to plausibly allege a violation the DMCA. Thus, the Court GRANTS Motion to Dismiss with respect to iSpot's third cause of action for violation of the DMCA.

As a general rule, leave to amend a dismissed complaint should be freely granted unless it is clear the complaint could not be saved by any amendment. Fed. R. Civ. P. 15(a); *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). In this instance, in light of the theory advanced by iSpot to date, it appears that iSpot cannot save this claim by amendment. It is therefore dismissed WITHOUT LEAVE TO AMEND.

**C. The Court grants iSpot's request for certification for interlocutory appeal.**

Finally, iSpot requests that, in the event the Court grants the instant Motion to Dismiss, the Court certify the instant order for interlocutory appeal. Opp'n at 16. This request is premised on the "split of authority in the case law" and lack of circuit authority "as to whether the unauthorized use of a password and username qualify as circumvention under the DMCA." *Id.*[6]

---

[5] iSpot focuses heavily on the Court's statement that "In the absence of facts indicating that an EDO employee other than Teyfukova used the Horizon credentials, the Court finds that its analysis as to Teyfukova's use of the credentials stands." Order at 22. But merely alleging that others used the credentials in the manner they were designed and intended to and with permission of Teyfukova—as opposed to a hypothetical scenario where a third-party managed to steal the credentials—does not transform these actions into circumvention. (To be clear, this hypothetical scenario is not considered here and itself might not constitute circumvention.)

[6] The EDO Defendants contend that the request is premature and thus must be denied. Reply at 7. But as this Order includes a final determination on the EDO Defendants' Motion to Dismiss, and as iSpot's request is contingent on the Court having granted the Motion, the Court finds the request's timing appropriate.

A district judge may certify for immediate appeal an otherwise unappealable interlocutory order if (1) "such order involves a controlling question of law"; (2) "there is substantial ground for difference of opinion" on the issue; and (3) "an immediate appeal from the order may materially advance the ultimate termination of the litigation."  28 U.S.C. § 1292(b).

Because Section 1292(b) "is a departure from the normal rule that only final judgments are appealable," it "must be construed narrowly" and invoked only in "rare circumstances." *James v. Price Stern Sloan, Inc.*, 283 F.3d 1064, 1067 n.6 (9th Cir. 2002); *see also U.S. Rubber Co. v. Wright*, 359 F.2d 784, 785 (9th Cir. 1966) (*per curiam*) (explaining that the interlocutory appeal procedure is intended for relief "only in extraordinary cases where decision of an interlocutory appeal might avoid protracted and expensive litigation" and not "merely to provide review of difficult rulings in hard cases"). Section 1292(b) certification "requires the district court to expressly find in writing that all three § 1292(b) requirements are met." *Couch v. Telescope Inc.*, 611 F.3d 629, 633 (9th Cir. 2010).

1. This issue is not a "controlling question of law."

"A controlling question of law must be one of law—not fact—and its resolution must 'materially affect the outcome of litigation in the district court.'" *ICTSI Oregon, Inc. v. Int'l Longshore & Warehouse Union*, 22 F.4th 1125, 1130 (9th Cir. 2022) (citing *In re Cement Antitrust Litig. (MDL No. 296)*, 673 F.2d 1020, 1026 (9th Cir. 1981)).

Given the early stage of this litigation, it is not clear that this requirement has been met. Although resolution of the *motion to dismiss* iSpot's DMCA claim turns on whether the alleged use of the Horizon credentials by the EDO Defendants would qualify a circumvention under the meaning of the statute, it has not yet been determined *factually* whether the EDO Defendants did indeed even use the Horizon credentials in the manner alleged. Should a dispositive motion or trial determine that the allegations cannot be proven, the question presented about the interpretation of the DMCA would be moot and not be a controlling question at all.

/ / /

/ / /

2. <u>There is not a "substantial ground for difference of opinion."</u>

"Courts traditionally will find that a substantial ground for difference of opinion exists where the circuits are in dispute on the question and the court of appeals of the circuit has not spoken on the point, if complicated questions arise under foreign law, or if novel and difficult questions of first impression are presented. However, just because a court is the first to rule on a particular question or just because counsel contends that one precedent rather than another is controlling does not mean there is such a substantial difference of opinion as will support an interlocutory appeal." *Couch*, 611 F.3d at 633 (internal citations and question marks omitted).

This case does not meet the traditional definition of substantial ground for difference. Contrary to iSpot's assertions, there is not a "split of authority in the case law." Opp'n at 16. It is merely the case that there is not yet any binding authority on this question.

3. <u>It does not appear that an "immediate appeal would materially advance the ultimate termination of the litigation."</u>

This case appears to be a rather straightforward trade secrets case, and two other claims remain besides the DMCA claim. There is therefore no indication that an appeal would "decision of an interlocutory appeal might avoid protracted and expensive litigation." At best, it would "merely provide review of [a] difficult ruling[] in [a] hard case[]." See *U.S. Rubber Co. v. Wright*, 359 F.2d 784, 785 (9th Cir. 1966) (*per curiam*) This is insufficient to justify interlocutory appeal.

\*\*\*

Thus, none of the three interlocutory appeal requirements are not met. As the Court may only grant a request for certification for an interlocutory appeal "in extraordinary cases" and when "all three § 1292(b) requirements are met," *Couch*, 611 F.3d at 633, iSpot's request is DENIED.

/ / /

/ / /

/ / /

## **CONCLUSION**

The Court GRANTS the EDO Defendants' Motion to Dismiss as to the Digital Millennium Copyright Act WITHOUT LEAVE TO AMEND. The Court further DENIES iSpot's Request for Certification for Interlocutory Appeal.

**IT IS SO ORDERED.**

Dated: May 22, 2023

MAAME EWUSI-MENSAH FRIMPONG
United States District Judge