**O**

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ISPOT.TV, INC.,<br><br>*Plaintiff*,<br>v.<br><br>NADYA TEYFUKOVA and ENTERTAINMENT DATA ORACLE,<br><br>*Defendants*. | Case No.: 2:21-CV-06815-MEMF-MAR<br><br>**ORDER DENYING DEFENDANT ENTERTAINMENT DATA ORACLE'S MOTION FOR DISMISSAL, JUDGMENT AS A MATTER OF LAW, OR A NEW TRIAL [DKT. NO. 492]** |

Before the Court is the Motion for Dismissal, Judgment as a Matter of Law, or a New Trial filed by Defendant Entertainment Data Oracle. Dkt. No. 492 ("Motion"). For the reasons stated below, the Motion is DENIED.

/ / /

/ / /

/ / /

# I. Background

## A. Factual Background

Plaintiff iSpot.tv, Inc. ("iSpot") alleges that Defendants Nadya Teyfukova and Entertainment Data Oracle, Inc. ("EDO") impermissibly used iSpot's data for EDO's advantage. iSpot alleges that this happened in two ways.

First, iSpot alleges that EDO used iSpot's services and data to develop a competing service. In so doing, iSpot alleges EDO breached the contracts between iSpot and EDO. Second, iSpot alleges that EDO, which employed Teyfukova, used Teyfukova's credentials from a prior employer to download iSpot's data. In so doing, iSpot alleges that EDO and Teyfukova misappropriated iSpot's trade secrets.

## B. Procedural History

iSpot initiated this action in federal court on August 24, 2021. *See* Dkt. No. 1. On February 24, 2023, iSpot filed its operative Second Amended Complaint. *See* Dkt. No. 74 ("2AC"). It states four causes of action against EDO[1]: (1) violation of the Defend Trade Secrets Act, 18 U.S.C. § 1836; (2) misappropriation of trade secrets, Cal. Civ. Code § 3426.1 *et seq.*; (3) violation of the Digital Millennium Copyright Act, 17 U.S.C. § 1201 *et seq.*; and (4) breach of contract. *See generally id.*

On May 22, 2023, this Court granted Defendants' motion to dismiss iSpot's third cause of action, for violation of the Digital Millennium Copyright Act. *See* Dkt. No. 90.

On February 28, 2025, Defendants moved for summary judgment. Dkt. No. 172. This Court granted the motion in part. Dkt. No. 374. None of the three remaining claims were dismissed in their entirety, but the Court granted summary judgment in favor of EDO on several of iSpot's theories.

A jury trial in this matter began on January 5, 2026. *See* Dkt. No. 433. On January 15, 2026, the jury returned a verdict. *See* Dkt. No. 468. The jury concluded that EDO was liable for breach of contract and awarded iSpot $18.3 million in actual damages. *See id.* at 2. And it concluded that EDO

[1] The first three listed causes of action were also brought against Teyfukova. She was not found liable at trial and has stated no position on this Motion.

and Teyfukova were not liable for trade secret misappropriation under federal or California law, as the iSpot Data[2] was not iSpot's trade secret. *See id.* at 5.

On February 19, 2026, EDO filed the instant Motion. *See* Motion. On March 12, 2026, iSpot opposed the Motion. *See* Dkt. No. 504 ("Opposition" or "Opp."). On March 26, 2026, EDO filed a reply. *See* Dkt. No. 512 ("Reply").

This Court held a hearing on the Motion on April 16, 2026, after which it took the Motion under submission.

## II. Applicable Law

### A. Subject Matter Jurisdiction

If a court "determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3). This objection "may be raised at any stage in the litigation, even after trial and the entry of judgment." *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 506 (2006).

In any civil action in which a district court has original jurisdiction, the court may exercise "supplemental jurisdiction over all claims that are so related . . . that they form part of the same case or controversy." 28 U.S.C. § 1367(a). But the court may "decline to exercise supplemental jurisdiction" over a state law claim if the claim raises novel state law issues, the claim substantially predominates over the original jurisdiction claim, no original jurisdiction claim remains, or in other exceptional circumstances. *Id.* § 1367(c).

The Ninth Circuit has not adopted a definition of what constitutes a "common nucleus of operative fact." *See, e.g.*, Virginia L. Phillips & Karen A. Stevenson, The Rutter Guide, Federal Civil Procedure, Calif. & 9th Cir. Eds §§ 2:860–2:863 (relying on non-Ninth Circuit authority to define "common nucleus of operative fact"). Indeed, the approaches taken by courts in jurisdictions across the country vary. *See Kubala v. Smith*, 984 F.3d 1132, 1137 (6th Cir. 2021) (summarizing different approaches across jurisdictions). In evaluating whether a common nucleus of operative fact exists, courts determine whether there is sufficient overlap between the claims asserted, the facts

---

[2] The jury received the following definition for the "iSpot Data:" "iSpot's proprietary real-time syndicated tv ad airings data." Jury Instruction No. 33, Dkt. No. 465 at 34.

alleged, and the potential evidence required to establish the need for supplemental jurisdiction. *See* Rutter Guide §§ 2:860–2:863; *see also Apparel Art Int'l, Inc. v. Amertex Enters. Ltd.*, 48 F.3d 576, 584 (1st Cir. 1995) (noting that factors include "1) whether the facts are related in time, space, origin or motivation; 2) whether the facts form a convenient trial unit; and 3) whether treating the facts as a unit conforms to the parties' expectations").

In the Seventh Circuit, a "loose factual connection between the claims is generally sufficient." *Baer v. First Options of Chicago, Inc.*, 72 F.3d 1294, 1299 (7th Cir. 1995) (internal quotation marks omitted). And the Ninth Circuit has "approvingly cited a Seventh Circuit opinion which noted that only a 'loose factual connection between the claims' is necessary for the purposes of pendent jurisdiction." *Fiore v. Walden*, 688 F.3d 558, 586 (9th Cir. 2012), *rev'd on other grounds*, 571 U.S. 277 (2014) (citing *Channell v. Citicorp Nat'l Servs., Inc.*, 89 F.3d 379, 385 (7th Cir. 1996)).

**B. Motion for Judgment as a Matter of Law**

"Judgment as a matter of law is appropriate when the evidence presented at trial permits only one reasonable conclusion." *Mangum v. Action Collection Serv., Inc.*, 575 F.3d 935, 938–39 (9th Cir. 1999).

Rule 50 governs motions for judgment as a matter of law. Where a party wishes to challenge the sufficiency of evidence supporting a verdict in a civil case, the party must bring two separate motions. *Nitco Holding Corp. v. Boujikian*, 491 F.3d 1086, 1089 (9th Cir. 2007). First, the party must move for judgment as matter of law under Rule 50(a) before the case is submitted to the jury. *Id.*; *see also* Fed. R. Civ. P. 50(a)(2). The party must then file a renewed motion for judgment as a matter of law under Rule 50(b) after either the entry of judgment or the jury is discharged. *Nitco Holding*, 491 F.3d at 1089; *see also* Fed. R. Civ. P. 50(b).

When analyzing a motion for judgment as a matter of law, courts "view the evidence in the light most favorable to the non-moving party . . . and draw all reasonable inferences in that party's favor." *Josephs v. Pac. Bell*, 443 F.3d 1050, 1062 (9th Cir. 2006) (citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 149–50 (2000)). The court may not "assess the credibility of witnesses." *Bell v. Clackamas County*, 341 F.3d 858, 865 (9th Cir. 2003). The court also may not

"substitute its view of the evidence for that of the jury." *Johnson v. Paradise Valley Unified Sch. Dist.*, 251 F.3d 1222, 1227 (9th Cir. 2001); *see also Harvey v. Office of Banks & Real Estate*, 377 F.3d 698, 707 (7th Cir. 2004) (noting the court's role "is not to determine whether the jury believed the right people, but only to assure that it was presented with a legally sufficient basis to support the verdict").

**C. Motion for a New Trial**

Rule 59 governs motions for new trials. Courts may, on motion, grant a new trial on all or some of the issues after a jury trial, "for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a). In the Ninth Circuit, a trial court "may grant a new trial only if the verdict is contrary to the clear weight of the evidence, is based upon false or perjurious evidence, or to prevent a miscarriage of justice." *Passatino v. Johnson & Johnson Consumer Prods., Inc.*, 212 F.3d 493, 510 n.15 (9th Cir. 2000). To grant the motion, "the trial court must have a firm conviction that the jury has made a mistake." *Landes Constr. Co., Inc. v. Royal Bank of Canada*, 833 F.2d 1365, 1372 (9th Cir. 1987).

**D. Remittitur of Damages**

"The jury's verdict must be upheld unless the amount is 'grossly excessive or monstrous, clearly not supported by the evidence, or based only on speculation or guesswork.'" *Bell v. Williams*, 108 F.4th 809, 830 (9th Cir. 2024) (quoting *Harper v. City of Los Angeles*, 533 F.3d 1010, 1028 (9th Cir. 2008)). Remittitur should not be granted unless "a damages award exceeds its reasonable bounds." *Id.* And, where remittitur is granted, it "must reflect 'the maximum amount sustainable by the proof.'" *Oracle Corp. v. SAP AG*, 765 F.3d 1081, 1094 (9th Cir. 2014) (quoting *D&S Redi-Mix v. Sierra Redi-Mix & Contracting Co.*, 692 F.2d 1245, 1249 (9th Cir. 1982)).

**III. <u>Discussion</u>**

EDO's Motion requests that this Court dismiss the breach of contract claim because this Court lacks subject matter jurisdiction over iSpot's breach of contract claim. Alternatively, EDO asks this Court to grant EDO judgment as a matter of law under Rule 50(b)—or grant EDO a new trial under Rule 59—for two reasons. First, it argues that the trial record does not contain substantial

evidence of any EDO breach of contract that caused iSpot damages. Second, it argues that the trial record does not contain substantial evidence of the $18.3 million damages award.

For the reasons below, this Court rules as follows. First, this Court had subject matter jurisdiction over the breach of contract claim. Second, the trial record contains sufficient evidence that EDO breached its contract with iSpot, and that that breach caused iSpot harm. Third, the trial record contains sufficient evidence to support the jury's damages award.

In sum, the Motion is denied.

**A. This Court properly exercised jurisdiction over iSpot's breach of contract claim.**

First, the parties dispute whether this Court has jurisdiction to adjudicate iSpot's breach of contract claim. Motion at 5–8; Opp. at 3–7; Reply at 1–2. For the reasons below, this Court concludes that its exercise of jurisdiction was proper.

This Court has previously addressed this issue at the motion to dismiss stage. *See* Dkt. No. 71 ("MTD Order"). There, it explained that—under the "loose factual connection" approach, and at the pleadings stage—the "overarching narrative indicates that the federal claims and breach of contract claim arise from a common nucleus of operative fact." *Id.* at 10. It explained that the pleadings alleged that "EDO first breached their contract with iSpot in 2017 and then, upon hiring Teyfukova, proceeded to rely on Teyfukova's credentials to continue to pull data to maintain their database." *Id.* Accordingly, this Court rejected Defendants' arguments that it lacked jurisdiction over the state law claim. *Id.*

In the Motion, EDO renews its argument, arguing that the "evidentiary record adduced at trial . . . now makes clear that jurisdiction over the contract claim is lacking." Motion at 6. It argues that no common nucleus of operative fact existed between the trade secret claims and the breach of contract claim, as the facts and evidence material to one claim were immaterial to the other. *Id.* at 6–8. For that reason, EDO contends that the "loose factual connection" test is not met, as iSpot did not "ultimately rely on *any* common evidence to establish both sets of claims." *Id.* at 8 (citation

modified). In Opposition, iSpot argues that its contract and trade secrets claims form the same case or controversy under Article III, noting the overlap in witnesses and evidence, *see* Opp. at 4–5, and argues that declining supplemental jurisdiction would be an abuse of discretion, *id.* at 7–8. On Reply, EDO responds that dismissal is not discretionary when this Court lacks jurisdiction, that background facts cannot establish supplemental jurisdiction, and that the trial record revealed two nuclei of operative fact—such that the operative facts distinguished the federal and state claims. *Reply* at 1–5.

A loose factual connection exists, and two claims are part of the same case or controversy, when the claims "revolve around the same fact pattern" such that the testimony underlying each claim "involve[s] factual overlap and many of the same witnesses." *Blakely v. United States*, 276 F.3d 853, 862 (6th Cir. 2002); *see also CE Distribution*, 380 F.3d at 1113–14 (finding a loose factual connection where "the allegations and counterallegations concern the same basic facts—competing sales of electronic products—and are sufficiently connected")).

Applying that standard, this Court has jurisdiction over the state law claim.[3] As in *Blakely*, and as this Court explained in its MTD order, the trial ultimately involved factual overlap and many of the same witnesses. The federal and state law claims both revolve around the history of EDO's conduct, and allegations of EDO's misuse of iSpot's TV ad airings data, analytics, and dashboard. All claims existed in the same factual setting—of iSpot and EDO's competitive relationship, of their development of their respective products, and of the utility of TV ad airings data to those products. And, though the claims against EDO were not duplicative, they constituted part of a continuous

[3] But iSpot's arguments that a failure to exercise jurisdiction would be an abuse of this Court's discretion are unavailing. As EDO's Reply notes, if this Court lacked jurisdiction under Section 1367 because the claims did not form part of the same case or controversy, declining jurisdiction would not be discretionary. Similarly, iSpot's contention that EDO has forfeited this argument by failing to raise it at the final pretrial conference lacks merit, as if a court "determines *at any time* that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3) (emphasis added).

alleged practice: the unauthorized use of iSpot's data, first through a breach of contract, and then through the misuse of Teyfukova's old credentials at EDO's direction.

Moreover, courts considering the exercise of supplemental jurisdiction routinely consider the overlap in testifying witnesses. *See, e.g.*, *Bafford v. Northrop Grumman Corp.*, No. 18-10219, 2022 WL 1002350, at *7 (Apr. 4, 2022); *Byrd v. Teater*, No. 06-900, 2008 WL 495757, at *22 (E.D. Cal. Feb. 21, 2008); *Carne v. Stanislaus Cnty. Animal Servs. Agency*, 445 F. Supp. 3d 772, 775 (E.D. Cal. 2020); *Sibling Rivalry Diverse Servs., LLC v. City of Boise*, No. 23-47, 2024 WL 1555367, at *11 (D. Idaho Apr. 10, 2024). And here, as the Opposition notes and the Reply does not contest, many of the witnesses' testimony embraced all claims. *See* Opp. at 5 (noting that Sean Muller, Travis Sinclair, Joshua Lee, Mark Myers, Bryce Cook, Laurence Freed, and Kevin Krim all testified as to both claims). So the evidentiary overlap in witness testimony weighs in favor of finding that this Court has supplemental jurisdiction over the state law claim.

Additionally, the Opposition notes—and the Reply does not appear to dispute—the frequency with which courts exercise supplemental jurisdiction over state law claims for misappropriation of intellectual property alongside federal intellectual property infringement claims. *See LiveOps, Inc. v. Teleo, Inc.*, No. 5-3773, 2006 WL 83058, at *3 (Jan. 9, 2006) (collecting cases); *see also WeRide Corp. v. Kun Huang*, 379 F. Supp. 3d 834, 841 (N.D. Cal. 2019), *as modified*, No. 18-7233, 2019 WL 5722620 (N.D. Cal. Nov. 5, 2019). It appears logical to this Court that, where an action arises from two distinct alleged wrongs that form one cohesive narrative between the same parties, the parties would ordinarily be expected to try the wrongs in one proceeding, and so supplemental jurisdiction exists.

EDO's arguments to the contrary are unavailing. It appears to this Court that EDO understates the commonality of operative facts between the trade secrets and contract claims. The persuasive authorities they cite on Reply confirm this: For example, EDO cites *Bafford* for the proposition that no loose factual connection exists when the common facts are "ancillary." Reply at

2. But the underlying reasoning in *Bafford* renders it plainly distinguishable. There, in the court's words:

> The first and most obvious observation in this regard is that the two sets of claims are different claims against different defendants. This observation alone militates against supplemental jurisdiction, because the separateness of the defendants and the separateness of the sets of claims decreases the degree of commonality of operative facts. . . .
> Given these observations, the prove-up of the ERISA claim will involve testimony from Plaintiffs about whether they received statements and testimony from the Administrative Committee about their policies and practices for sending plan participants statements. . . . The negligence and negligent misrepresentation claims, by contrast, are based on a completely different set of operative facts . . . . Not one of these operative facts is common to the claim against the Administrative Committee. . . . .To the extent testimony from the Administrative Committee will be required, if it is required at all, that testimony will be ancillary to the key issues.

*Id.* at *7. Faced with distinct claims against different defendants, where testimony relevant to one claim would be ancillary at best to the other, the court found it could not exercise jurisdiction.[4] For the reasons this Court has explained, the facts here are distinguishable and satisfy the loose factual connection test.

Further, EDO proposes that this Court apply a standard inconsistent with the loose factual connection test. The Reply notes that "iSpot's argument that 'both claims involve EDO's misuse of the same intellectual property' . . . is also wrong on its face," because "iSpot's contract claim did not *require* it to demonstrate that anything it offered to EDO was protected intellectual property." Reply at 3 (emphasis added). But that is not the standard. This Court does not read the parties' authorities to require that the claims' legal elements necessarily have overlap. By this logic, no court could ever exercise supplemental jurisdiction over the claims at issue here—regardless of the underlying factual

[4] The parties' other cited cases for the opposite result are distinguishable. *See, e.g.*, *Byton N. Am. Corp. v. Breitfeld*, No. 19-10563, 2021 WL 1152895, at *5 (C.D. Cal. Jan. 5, 2021) ("Courts have routinely found that they lack supplemental jurisdiction over state law claims when the sole connection to the federal claim is an employment contract or employment relationship between the parties."); *Kellwood Apparel LLC v. Protrend Ltd.*, No. 20-0214, 2020 WL 8474701, at *2 (C.D. Cal. Dec. 14, 2020) (finding no supplemental jurisdiction where nonmovant "ha[d] not identified any . . . operative fact which overlaps with [movant]'s federal trade secrets claim"); *Berg v. BCS Fin. Corp.*, 372 F. Supp. 2d 1080, 1093 (N.D. Ill. 2005) ("Yet the mere fact that claims arise from an employment relationship is, by itself, insufficient to warrant the exercise of supplemental jurisdiction.).

overlap, common evidence, or common witnesses—because proof of a breach of contract claim does not require showing that the breach occurred specifically through the misuse of protected intellectual property. This result would be anomalous and, it appears to this Court, inconsistent with the persuasive authorities interpreting the supplemental jurisdiction standard as the Ninth Circuit has approved it.

In sum, this Court has supplemental jurisdiction over the breach of contract claim. EDO's request to dismiss the action under Rule 12(b)(1) is denied.

**B. Substantial evidence supports iSpot's breach of contract claim.**

Next, at issue is whether iSpot showed substantial evidence that that EDO breached its contract with iSpot. For the reasons below, this Court concludes that it did.

As the jury instructions explained, iSpot claimed that "EDO breached the contract in one or more of the following respects: (1) EDO passed through iSpot's raw data directly to EDO's customers, in violation of Section 1.3(b)[]; (2) EDO used iSpot's data to test EDO's TV Ad Dataset, in violation of Sections 1.3(e) and 1.3(i) of the 2017 Agreement; (3) EDO used the iSpot Service to build and/or contribute to EDO's own competing third party products . . . ; and/or (4) EDO used non-movie data it downloaded from iSpot using Disney's API access key to help build or contribute to EDO's TV Ad Dataset in violation of Sections 1.3(e), 1.3(g) and/or 1.3(i)." Dkt. No 465 at 23 (Jury Instruction No. 23). For iSpot to prove its breach of contract claim, EDO needed to prove three things: (1) that the 2017 Agreement contained the relevant provisions; (2) that EDO breached the 2017 Agreement "in one or more of the four ways claimed by iSpot" discussed above, and (3) that iSpot was damaged as a result. *Id.* at 25 (Jury Instruction No. 24).

EDO's Motion alleges iSpot failed to produce substantial evidence of causation. Motion at 8. EDO explains that, to show causation, "iSpot needed to show ***both*** that (1) EDO wouldn't have entered the market in December 2017 but for the alleged breaches (the so-called "head start"); ***and***

(2) that, but for the early market entrance, EDO's sales would have gone to iSpot." *Id.* at 8–9 (citations omitted). "But the evidence at trial was insufficient for a reasonable jury to conclude that either was true with reasonable certainty,"[5] or that "iSpot was entitled to lost subscription fees." *Id.* at 9. The Court addresses each argument below.

*i. <u>Substantial evidence supports iSpot's head start theory.</u>*

First, EDO argues that it is entitled to judgment as a matter of law because "substantial evidence does not support EDO obtaining a head start of any length for its products, whether due to accelerated development of TAD or any other EDO technology that allegedly benefited from EDO's alleged breaches." Motion at 9. For the reasons below, this Court concludes that substantial evidence supported the jury's implicit finding that EDO received a head start.

EDO's argument on this basis has two prongs: that any evidence that EDO used iSpot's TAD data to fill gaps in EDO's Kantar-licensed data set does not constitute substantial evidence of a head start, and that no other evidence exists connecting EDO's alleged breaches to a head start. Motion at 9–10.

But sufficient evidence at trial contradicts the second premise.[6] Even putting aside iSpot's argument that EDO used iSpot data to fill gaps in its dataset, other theories supported iSpot's allegation that EDO had a head start. In particular, the Motion does not meaningfully address some of iSpot's breach of contract theories—namely, that EDO used iSpot's data to *test* EDO's dataset (not merely to fill gaps in it), and that EDO benefited from access to iSpot's database structure (not just the data itself). Either theory could, by itself, support a finding that EDO had a head start.

---

[5] Though the language of "reasonable certainty" appears in the relevant jury instructions, this cannot be separated from the broader context that iSpot's burden was to prove its claim by a preponderance of the evidence. *See* Dkt. No. 465 at 4 (Jury Instruction No. 4). So at issue is whether substantial evidence supports a finding that iSpot suffered damages with reasonable certainty—not merely whether iSpot proved that it is reasonably certain that it suffered damages. *See Harvey v. Office of Banks & Real Estate*, 377 F.3d 698, 707 (7th Cir. 2004) (noting the court's task "is not to determine whether the jury believed the right people, but only to assure that it was presented with a legally sufficient basis to support the verdict").

[6] Because the Opposition does not meaningfully argue that substantial evidence at trial supported iSpot's theory that EDO's use of iSpot's data to fill gaps granted it a head start, this Court treats the first premise as conceded for the purposes of this Motion.

Substantial evidence supported these theories. As to the dataset testing theory, Georgios Zervas testified that EDO benefited from access to iSpot's data as method of validating its other data. *See, e.g.*, Tr. at 569:2–570:18 (concluding that EDO "used iSpot data to validate the accuracy and the quality of data from Kantar"). And, as to the database structure theory, Travis Sinclair, Anthony Skinner, and Georgios Zervas testified in support of the conclusion that EDO benefited from access to iSpot's database structure. *See, e.g.*, Tr. at 568:4–20 (Zervas concluding that "EDO having access to the iSpot API [application programming interface] . . . would have been beneficial for the development of EDO's own competing TV analytics product"); Dkt. No. 418-8 at 44:13–46:1, 149:25–150:15 ("Skinner Dep.") (Skinner explaining that a competitor's access to one's database could enable the competitor to "reverse engineer . . . a system that could compete"); Dkt. No. 449-7 at 240:20–248:10 ("Sinclair Dep.") (Sinclair testifying that EDO had the potential to reverse engineer iSpot's database structures on the basis that EDO "ha[d] all of the tooling to do so, ha[d] access to the documentation, ha[d] access to the API data, [and] ha[d] the tools in front of them to be able to do so"); Breitenbucher Decl., Ex. D, at 2 (EDO employee writing that "there is value in letting us play with and learn from the iSpot UI").

EDO's arguments to the contrary do not persuade this Court otherwise. The Motion appears to overstate iSpot's burden. *See* Motion at 6 ("iSpot's head start theory required iSpot to show that EDO could not have offered any marketable version of TV Ad Analytics, Ad Engage, and Ad Engage Convergent without breaching its agreement with iSpot."). Similarly, the Reply cites no authorities for the proposition that iSpot needed to show that "EDO could not have offered any version of its products without breaching the agreement." Reply at 8. This formulation is more sweeping than EDO's own supporting authorities, which merely note that a head start theory of causation "focuse[s] on ensuring that one who prematurely used secret information gains no unfair advantage in the competitive marketplace." Motion at 9 (quoting *ams-OSRAM USA Inc. v. Renesas Elect. Am., Inc.*, 133 F.4th 1337, 1348 (Fed. Cir. 2025)). In other words, iSpot's burden of proof did not require it to show that EDO could not have formulated "any marketable version" of its products absent the breach—only that it derived an unfair advantage that did allow it to market its product on an earlier timeline.

In sum, substantial evidence supported a finding that EDO derived a head start from breaching its contract with iSpot.

ii. *Substantial evidence supports iSpot's loss of profits due to EDO's early market entrance.*

Second, EDO argues that it is entitled to judgment as a matter of law because iSpot failed to demonstrate that it suffered damages due to EDO's head start. Motion at 10–15. This argument has two components: EDO argues that iSpot failed to show that it lost profits to EDO, and that iSpot failed to show that "iSpot would have gotten the business of any of the 13 EDO clients Cook identified but for EDO's alleged head start." *Id.*

Substantial trial evidence, however, supported the conclusion that iSpot lost customers—and, therefore, profits—to EDO.[7] EDO explains that iSpot's lost profits theory cannot stand where "a plaintiff lacks evidence that it would have *actually made a sale*" to the particular customer at issue. *See* Motion at 14 (citing *Golf Landscaping, Inc. v. Century Const. Co.*, 39 Wash. App. 895, 903–04 (Ct. App. 1984)). But iSpot introduced evidence responsive to this standard through the testimony of Bryce Cook, iSpot's damages expert, who testified as to his conclusion that EDO's sales displaced iSpot as the provider of real-time advertisement analytics to several of iSpot's customers. *See* Tr. at 1047:18–1048:11. And, though EDO correctly notes that Cook assumed the existence of a two-supplier market (and did not independently find that one existed), other evidence supported that assumption. *See, e.g.*, Tr. at 715:1–4 ("Q. Who competes in that market segment [today]? A. iSpot and EDO."); 727:9–19 (to witness' knowledge, only iSpot and EDO "offer[ed] real-time TV ad measurement airings and analytics"). EDO cites evidence that challenges the two-supplier market assumption. *See* Motion at 12–13. But drawing all inferences in iSpot's favor, and declining to make

[7] EDO argues that substantial evidence on this point must include economic proof of the nature of the market, and that iSpot concededly offered no such economic proof. *See* Motion at 12. But EDO lacks support for such a requirement. *See ATEN Int'l Co. v. Uniclass Tech.*, No. 15-04424, 2017 WL 11631178 (C.D. Cal. Apr. 24, 2017). In *ATEN*, the court went on to explain that the "layers of guesswork in [the damages expert's] analysis" were what rendered the proof insufficient. *Id.* at *3. The *ATEN* court did not, as EDO implies, require proof in the form of economist testimony. Instead, the plaintiff's evidence failed because it did not "properly account for the other competitors in the 'but for' market." *Id.* at *3. As this Court has already explained, this matter is distinguishable on this basis.

credibility determinations as to competing evidence, EDO has not shown that it is entitled to judgment as a matter of law. *Josephs*, 443 F.3d at 1062; *Bell*, 341 F.3d at 865.

Moreover, EDO's argument as to what it terms the "EDO Business from 13 Clients theory"—*see* Motion at 15—is not dispositive. EDO appears to concede that iSpot *did* offer evidence that some of the thirteen identified clients "contracted with EDO in the years after they stopped contracting with iSpot." *Id.* But EDO contends that iSpot's argument is defective in part because iSpot did not demonstrate that it lost *all thirteen* clients to EDO because of EDO's breach. Even if this were true, however, it would be of no moment: To award lost profit damages, the jury needed to find "the fact of damage[,] rather than the amount of damage," with reasonable certainty. *See* Dkt. No. 465 at 31 (Jury Instruction No. 30). So EDO's implicit concession—that iSpot did offer evidence as to the loss of some of its clients but for EDO's head start—supports denial of the Motion on this basis. *See* Motion at 15. EDO also argues that the evidence that was introduced was insufficient, citing *Good Technology Corp. v. MobileIron, Inc.*, No. 12-5826, 2015 WL 3882608 (N.D. Cal. June 23, 2015). This case is nonbinding and distinguishable: There, the plaintiff only showed that it and defendant "[we]re competitors in the same market segment . . . because [they] compete[d] in the same arena and often compete for some share of their customer base." *Id.* at *7. Here, in contrast, Cook testified as to his conclusion that "each of the[] 13 customers went from iSpot to EDO," explaining that EDO's sales "completely displaced iSpot as the provider of the real-time ad analytics and measurement" to these customers. Tr. at 1046:22–1048:11. So the evidence at trial in this matter was more substantive than that discussed in *Good Technology*.

In sum, substantial evidence at trial supported iSpot's argument that it lost profits due to EDO's head start. For that reason, the Motion as to this basis is denied.

*iii. <u>iSpot need not demonstrate its entitlement to lost subscription fees to prevail in showing causation.</u>*

Third, EDO argues that it is entitled to judgment as a matter of law because iSpot failed to demonstrate its entitlement to lost subscription fees. For the reasons below, this argument—even if true—does not show why the jury erred in finding causation.

As an independent reason why EDO contends that it is entitled to judgment as a matter of law, it argues that iSpot's proof of causation was defective because "[n]o substantial evidence supported lost subscription fees for either the alleged use of the so-called non-movie Disney data or the alleged disclosure of raw data to clients." Motion at 15. As EDO puts it, "[t]here was simply no trial evidence that iSpot would have received additional subscription fees but for EDO's alleged misuse of iSpot data." *Id.*

This Court understands this argument to be that iSpot cannot prove that EDO's breaches (under iSpot's first or fourth theory) caused iSpot harm in the form of lost subscription fees. But this Court has already established that substantial evidence existed supporting iSpot's other theories of contractual breach. And, as iSpot notes, the jury was instructed only to find that one or more breaches had occurred—not to detail which ones, or to specify what damage ensued from which breach. *See* Opp. at 3 n.1. Nor was lost subscription fees the only theory of damages that iSpot sought, as this Court has already addressed. *Compare* Dkt. No. 465 at 31 (Jury Instruction No. 30) ("One type of actual damages that iSpot seeks is lost profits.") *with* Dkt. No. 465 at 32 (Jury Instruction No. 31) ("Another type of actual damages that iSpot seeks is lost subscription fees."). And, as this Court has already explained, iSpot has adequately supported its argument that it lost profits due to EDO's head start.

To that end, EDO's argument on this point does not entitle EDO to judgment as a matter of law.

**C. Substantial evidence supports the jury's damages award.**

Next, at issue is whether substantial evidence supported the jury's damages award. EDO argues that it does not, so it asks this Court to grant judgment as a matter of law, a new trial as to damages, or remittitur as to the damages supported by the evidence at trial. *See* Motion at 16–18.

"Where a jury awards damages in a lump sum, as is the case with the actual damages award, we generally do not disturb the damages award unless the resulting award exceeds the amount sustainable by evidence in the record." *Polar Bear Prods., Inc. v. Timex Corp.*, 384 F.3d 700, 710 (9th Cir. 2004). "Generally, courts have granted a new trial or remittitur when the jury finds a damages amount that is excessively more than the evidence shows." *Moonbug Ent. Ltd. v. BabyBus*

*Network Tech. Co.*, No. 21-6536, 2024 WL 2193323, at *31 (N.D. Cal. May 15, 2024), *aff'd*, 2025 WL 3111597 (9th Cir. Nov. 6, 2025) (collecting cases).

The jury's damages award meets that modest standard. iSpot admitted into evidence the financial records that served as part of the basis for Cook's testimony as to damages calculations. *See* Dkt. No. 515-2 (Exhibit 509, spreadsheet showing iSpot's estimated hosting costs); Dkt. No. 515-3 (Exhibit 549, spreadsheet containing data regarding iSpot's profits and losses as to sales and marketing between 2018 and 2023). In arguing for the opposite result, EDO notes that some of Cook's projections were shared on exhibits (which are not themselves evidence) rather than through admitted exhibits or testimony. *See* Motion at 16–17. Based on this, EDO contends that the "jury's award literally has no rational basis." *See id.* at 17. But Cook's testimony at trial constituted damages evidence that the jury could properly consider. *See, e.g.*, Tr. at 1038:5–1041:22 (noting iSpot's "millions of dollars" of expenses in its product development period, and explaining that "it took time and approximately $20 million of research and development to continually refine [iSpot's] product"); *id.* at 1051:7–1052:5 (concluding that iSpot's cumulative lost sales, assuming a four-year head start for EDO, were $51.2 million).

Given that the jury had access to iSpot's financial records, coupled with expert testimony, "there are several bases on which the jury could have calculated the damages award; it was not bound to use the methods or numbers urged by the parties at trial." *Revolution Eyewear, Inc. v. Aspex Eyewear, Inc.*, No. 02-108, 2008 WL 6873809, at *4 (C.D. Cal. Apr. 24, 2008), *aff'd*, 563 F.3d 1358 (Fed. Cir. 2009). For similar reasons, EDO's arguments challenging Cook's damage calculation model's assumptions are unavailing; the jury had financial records from which it could have derived a rational calculation of the amount of damages that would make iSpot whole.[8] *See* Dkt. No. 465 at 30 (Jury Instruction No. 29) ("[Y]ou should determine the sum of money that will

---

[8] EDO relies on *City of Vernon v. Southern California Edison Co.*, 955 F.2d 1361 (9th Cir. 1992), but this case does not support its position. There, the court affirmed the grant of summary judgment where the plaintiff's damage study was, "at best, seriously flawed"—and, therefore, where no damages had been properly shown. *Id.* at 1372. In contrast, this Court has already ruled that Cook's opinions are admissible, *see* Dkt. No. 354, the Court does not find that his opinions were "seriously flawed," and the Court finds that the jury had other evidence from which it could derive a damages figure.

put iSpot in as good a position as iSpot would have been if EDO had performed all of its promises under the contract.").

To that end, EDO has not demonstrated that the jury's lump-sum damages award is at odds with a permissible interpretation of the facts in evidence. *See Lucent Techs. Inc. v. Gateway, Inc.*, 509 F. Supp. 2d 912, 940 (S.D. Cal. 2007), *aff'd*, 543 F.3d 710 (Fed. Cir. 2008) ("Absent a view into the 'black-box' of the jury's decision making process, the Court cannot say that the jury's verdict was inconsistent or without the support of sufficient evidence."). For that reason, the Motion as to this basis is denied.

**IV. <u>Conclusion</u>**

For the foregoing reasons, the Motion is DENIED.

IT IS SO ORDERED.

Dated: October 24, 2026.

MAAME EWUSI-MENSAH FRIMPONG
United States District Judge